Significance and we will be greatly benefited we trust by the arguments being presented today Point out a few rules of the road including our lighting system alert to the red light Yellow is supposed to give you a two-minute warning, but the red is no warning at all this they stop We have As I mentioned three cases we may or may not take a break after two We will hear the first case of the day Michael Allen Pitts old versus Rostell on you can correct me on both pronunciations when you get a chance Mr. McLeod that pronunciation to probably May it please the court McLeod and the issue in this case is whether petrol suffering days of excruciating pain Due to Rostell and failure to examine him or provide any treatment was enough to survive summary judgment This court should reverse the court's decision for two reasons first because Rostell and refusal to conduct any assessment or To provide in the actual treatment for pet sold injury was enough to show deliberate indifference Or at least I should say to create a fact question to go to trial with and second on those facts Which are essentially undisputed the qualified immunity defense must fail Under this court's published decisions in Easter versus Powell and Alderson versus Concordia Parish Which are on point and controlling and in similar cases cited in briefs This court has allowed 8th Amendment claim to go forward where the nurse or official failed to examine or assess an injury and In Easter and in where the seller both cases there was an encounter with medical staff there was a Conversation there was discussion between the plaintiff and some prison personnel, but this court held that was not enough Because no actual treatment No actual care was provided and the pain and suffering the plaintiff suffered as a result of the delay in receiving treatment or care Was held to be sufficient substantial harm to allow an 8th Amendment claim to go forward as The US Supreme Court put it in Estelle versus Gamble some exercise of medical judgment is Necessary in order to trigger the rule that merely negligent care does not make out an 8th Amendment claim And that is precisely what is missing here on these facts Which are as far as the operative facts go on this issue essentially undisputed Rostelin knew that Petzold suffered an injury because officer Terrell reported it to him through proper protocol Rostelin knew that Petzold was suffering pain and in fact was barely able to walk Because they passed each other in the hallway on Rostelin's way to see officer Terrell Rostelin knew that Petzold was suffering swelling in his ankle because he directly reported that to him at the insulin window and Rostelin knew that Petzold was a type 1 insulin dependent diabetic and Despite this undisputed knowledge of an injury Despite this undisputed knowledge of pain and of his barely being able to ambulate around the prison Rostelin's first response to a properly routed request for care Which was Petzold reporting the injury to his office's unit officer Terrell his response was wait until Monday Two and a half days later Sick call wasn't as you know better than I was was more varied than that Significance of the response though you can address it was And maybe it came later, but was to ice it And get get some pain medicine and the problems perhaps with all of those So isn't that what the response was then he didn't Rostelin say ice the ankle Your honor is referring to the subsequent response that that happened at the insulin window, that's correct But the initial response of the defendant to it we love the overall package I mean that what really matters not the initial response He did ultimately get to Rostelin and the insulin line Rostelin says here are the things you need to do not all of which were Necessarily possible. I think that's perhaps what we need to be looking at well your honor certainly the entire record has to be examined That in that second response is likewise deficient because under the court's cases in Easter and where and Alderson merely giving advice or words to a Plaintiff who has suffered an injury and is in pain is not sufficient this court requires that some actual treatment or care be provided As Estelle V Gamble noted in the US Supreme Court's 1976 case the progenitor of all these cases There has to be some kind of treatment provided because a prisoner is dependent on his jailers to receive treatment He is not at liberty if Rostelin says go find some Motrin in the unit from someone which was a prison rule violation He's not at liberty to go to the pharmacy, which was closed or to go borrow some medicine from someone else It must be provided It was Rostelin's job to provide treatment not simply to give him encouraging words and send him on his way In fact what happened at the insulin window was when mr. Petzold got up to the to the line after dinner This is of course after he'd already made his first request for care and been rebuffed He directly asked mr. Rostelin nurse Rostelin if he would have mr. Petzold wait until insulin line was finished and then examine him and he asked for some medicine for the swelling and The pharmacy and put ice on it At that point mr. Petzold handed his insulin syringe back Steps to the side to allow the next one to come up and then said again the pharmacy is closed until Monday Can you give me something for this welling and the response to that third request for care was? Go find some motion from someone in the unit. It's undisputed that mr. Petzold was not at liberty to do so that would have been a violation of prison regulations and so Ultimately examining all of the encounter all of the circumstances between mr. Petzold and nurse Rostelin it's essentially undisputed that the response was a refusal to provide care Mr. Rostelin never asked a single question of this plaintiff He ascertained no facts or data on which he could possibly have exercised medical judgment And that is why this case cannot fall within the rule that merely negligent or substandard Care or treatment does not give rise to an Eighth Amendment claim Rostelin had knowledge of an injury and he had knowledge of a risk of serious harm and yet he took the chance That that injury on a diabetic inmate might be too serious to leave for two and a half days and Then he brushed aside the direct request repeated direct request for care from mr. Petzold himself Later that evening and knowledge of a risk of serious harm is all that this court requires as held in Easter and in Alderson Because that initial response was to rebuff his request for care and because that response was repeated Directly face to face at the insulin window This is enough to at least give mr. Petzold his day at trial it is enough to create a jury question on whether he was Deliberately indifferent to a substantial risk of serious harm as this courts already noted serious harm Includes unnecessary pain and suffering suffered by a planet during the interval of delay in treatment Here that interval was two and a half days the record indicates that because of nurse Rostelin's refusal to do anything For mr. Petzold he was forced to endure what he rated as a nine out of ten pain scale for the entire weekend He was barely able to shower himself He was hampered in all of his activities of daily living and by the time he finally did receive treatment Monday morning The swelling in his left ankle had reached his knee that in two and a half days of excruciating pain is Enough to constitute a risk at least of substantial harm and is enough to establish a jury question on this Eighth Amendment claim and those same facts also explain The qualified immunity defense must fail as it did for example in Easter versus Powell Did Easter involve a diabetic patient with an ankle injury? Easter Your honor, but there was an ankle injury involved in the Chapman case I believe and in fact the facts there were rather more favorable for the defendant than they are here because in Chapman We don't know if it was a fractured ankle or not Like mr. Petzold suffered all we know from the Chapman opinion which is cited in briefs It's that there was an ankle injury of some kind and then there was a debate in the evidence at summary judgment about whether the Defendant who'd been instructed to provide the plaintiff with ibuprofen and ice incidentally whether he actually did that or not And the court held there's a dispute about whether the defendant did or didn't provide Ibuprofen and ice for this ankle injury That's enough as the Supreme Court ever said that circuit precedent can clearly establish the law for purposes of qualified immunity Your honor, I'm not sure if they have but of course the Supreme Court itself established the law in this area in 1976 in the Estelle versus Gamble case Which gave rise to the entire deliberate indifference species of the Bivens action and in Estelle hold on Estelle's in 1983 case If you're referring to a section 1983 case, that's correct But this court has noted many times that the standards for a deliberate indifference claim are The Supreme Court's been very clear in cases like Ziggler Right that when we are questioning whether when you have when you're suing a federal officer under Bivens Where Congress has not created the right of action that they did against state officers like they did in Estelle Under 42 United States Code section 1983. The first question we have to decide is whether it is a new Bivens claim obviously the context in which the claim arises simply medical indifference against a Simply but a medical indifference claim against a federal jailer That's what was recognized in Carlson versus Green but not necessarily the same kind of claim against the same kind of officer asserted in the same Kind of way, right? Those are the the language that Ziggler uses so you can't just simply import the 1983 claims Full-stop, you know wholesale into the Bivens context Well, your honor if I'm understanding your question correctly, this court has has explicitly recognized That the standards to deal the law to apply to a deliberate indifference claim is the same whether it comes to the court In a state law context, which is a section 1983 action or in a federal law context Which we would call a Bivens action as the Supreme Court ever said that we can do that in a deliberate indifference claim I do not think so because I don't believe the Supreme Court has decided a deliberate indifference Bivens species of case with all of those specifics, but this court hasn't has Essentially equivocated as to the same standards applying on both cases and indeed in Easter itself This court said look the the law of deliberate indifference and what a prison Official must do has been well established. It's been established for some time and therefore if a prison official or nurses conduct is unreasonable and Evidence is provided that it's unreasonable if they refuse to provide care then ordinarily the qualified immunity defense should fail That's what the US Supreme Court said in Harlow v. Ferdinand, for example, is that if the law is established Ordinarily the qualified immunity defense ought to fail and so because the facts here at least give rise to a jury Question on whether mr. Rostlin was deliberately indifferent It is appropriate that the qualified immunity defense at the summary judgment stage as a matter of law Be defeated and do you think that Bivens claims whether they're cognizable at the threshold or Survive qualified immunity on the back end operate differently in the Fourth Amendment context and the Eighth Amendment context Your honor. I have not had occasion to consider whether they would operate differently under the Fourth Amendment because this claim arises under the eighth So I'll be perfectly frank with your honor That's the interesting question But I'm not prepared to to explain because the Supreme Court's had a lot to say about how it operates in the Fourth Amendment Context and they've said over and over again that of course you have a Fourth Amendment right to be free from unreasonable searches and seizures But that doesn't mean that any particular Fourth Amendment claim gets over qualified immunity We have to determine whether the officer in this case the the nurse would have been on notice that the thing that they were doing Was clearly outside the bounds of federal law that is a qualified immunity would protect all But the clearly incompetent and knowing violators of the law is your claim that the nurse in this case was a Knowing violator of the law or clearly incompetent That would that I'm using the Fourth Amendment Context cases and I'm asking if you would think that would apply in the Eighth Amendment case. Well, I will say this the US Supreme Court has said that any reasonable official which is keystone Is on notice of the law governing his conduct And I'm also taking the position that the law governing nurse Roslyn's conduct was clearly established. It was established in 1976 and it's still it's been established over and over again Perhaps more on point and more recently by this court's published decision in Easter versus Powell in 2006 and in fact two years ago I believe Judge Southwick was on the panel in the Alderson versus Concordia Parish case from 2017 which Reaffirmed everything that Easter held about here is what a prison official must do and if in failing to do So he or she inflicts unnecessary pain and suffering on a prison plaintiff That is enough at least to stay the claim Alderson was a 12b6 appeal or to survive summary judgment Easter was a summary judgment appeal So I hope that answers your honor's questions Because the law here has been as the Functional standards of what a prison nurse or official must do has been established for some time under the Eighth Amendment Nurse Roslyn was certainly and must be deemed to be on notice of what the law was and his refusal his blank Refusal to do anything about it was at the minimum substantial evidence of deliberate indifference sufficient to survive summary judgment And so if the court has no further questions, thank you Counsel you have time for rebuttal May it please the court. My name is Robert Wells. I'm with the United States Attorney's Office for the Eastern District of Texas in Tyler This case involves disagreement with medical treatment Medical treatment was actually given It wasn't what Petzl wanted But that's not what matters What matters is did Roslyn do? something and Here he did he didn't say no. He didn't ignore the claim And on top of that as much as there's a discussion about knowledge of the condition and how bad it was and that sort  And even here today about what Roslyn actually knew In his own affidavit in the record Petzl explains that he walks past Roslyn in the hall Roslyn says something like did you kick something kind of like makes it a little joke about it and Petzl says oh, well, I've talked to the housing officer. You'll see about it You'll find out about it later on but he didn't say take a look at my ankle right here and there in the hallway Nobody else is around them That'd be a perfect time if you're in agony and in pain to say so you got a nurse one-on-one Talk to him about it instead He waits he goes to the insulin line the target the insulin line that he's wanted to change ever since he arrived in Texarkana and Right then and there now he goes. Oh, hey, can you take a look at my ankle now? Not when they are one-on-one but when Roslyn is behind a little plexiglass window a high security issue Handling handing not needles to other inmates and their pills and that sort of thing. Other people are in line orderliness Really makes a difference for the insulin line But that's the time that Petzl says. Can you look at my ankle now? And he says put some ice on it and get some medicine Not back not anything else It's like right then and there and putting ice on it and getting some medicine is actually what some of the treatment that he received On Monday when he went to the sick bay What about the complications with at least part of those instructions that? The commissary or whatever the the place he could got medicine is labeled was closed get medicine from other inmates is allegedly Prohibited. What do you make of that? That's We'd probably can see that's something that he shouldn't have said as far as go and get something that you're not Just that he shouldn't have said he gave him no viable options so should was Roslyn on some sort of notice of at least the possibility of significant pain and Did not provide any medical care no, your honor. He's available medical care. I'm sorry. Sorry to interrupt you It's not that there was no viable options and it's made to seem Today that he had no choice. No other treatment available the entire two and a half days There is nothing else that he could possibly do and that's not the case I mean if it is if a prisoner has a heart attack in texture Canada on the weekend and sick Bay is closed They'll take him to the Christus Hospital in downtown texture Canada If somebody gets cut or needs an emergency medical treatment, that's the sort of medical treatment that's the constitutional obligation and Remedies that are available to inmates just like petzl They don't have to go and continue to walk the yard. They don't have to continue to walk everywhere exacerbating maybe fracturing But only swollen ankle they don't have to go and keep doing that if they're in significant pain nine out of ten pain scale type pain There's remedies available to them. They can go and say look I can't walk anymore. Look at the swelling up to my knee. I Need something now housing officer because that's I mean, that's another thing too in this case the housing officer Terrell never got sued and He's the one who is ultimately responsible for making sure that all the people in his housing unit get the treatment That's available to them for whatever reason whether it was wooding or Terrell It was somebody other than Rostelin who didn't provide the actual treatment to Pencil that he needed over the weekend because there's a causation standard. There's a causation requirement. It's the failure to provide the action to care If the delay results in substantial harm, well, who did who caused the delay here? There was there was other medical treatment available to pencil, why didn't he seek it? Rostelin knew that penciled was diabetic, correct? Yes, he did because he was in he saw him in the insulin line Did he also know that diabetics are predisposed to fractured bones generally? I'm not sure that's in the record your honor if he was made the insulin line He may or may not have known that I just don't believe that's in the record But As far as the knowledge of the severity of his condition the sick bay was available Earlier in the day prior to the insulin line. The insulin line is in the early evening after dinner. I Mean even pencil himself knew something was wrong because he was putting ice on himself but instead of availing himself of treatment When the sick bay was available Pressing his housing officer get me there. I know the commissary is gonna close I need to go and get some medicine. I I do there's some responsibility that penciled has for himself here So instead though, he waits to do it at the wrong time in the insulin line asking Roslyn hey Give me what I need right now. Well Roslyn's got insulin syringes to hand out to all these other guys in line For the other folks who are also in line, he's got other duties than in there. I mean it comes down to What's pencil's first reaction after Roslyn tells him get some ice and get some motion back in unit He doesn't just shrug and go away instead. He's already thinking lawsuit He turns to his buddy in line. I'm gonna need a statement from you. Did you hear that? Did you hear what he said to me? I mean who does that? Why did he do that? Is that the sort of reaction that somebody who's in pain has no That's retribution. I'm gonna get them now I've lost all these other grievances, but I'm gonna win this Well, that's not what a Bivens action is for the Bivens action is for cruel and unusual punishment Deliberate indifference It's to go after the nurse like in Easter verse Powell who knew the severity of the condition who? disregarded the pleas of help multiple pleas for help from the inmate and then the inmate who actually did indeed suffer direct causal harm due to that nurses Disregard their intentional disregard of what they knew about that inmates medical needs I mean, this is a unique situation because we all cite the same cases. I mean, I cite Easter verse Powell. I cite Estelle even the cases they didn't cite about Twisted ankles. I mean those cases even help here. I mean at the end of the case where they talked about a Twisted ankle being determined by a court here a district court here in New Orleans to be a serious harm Well at the end of the case The they say it's not a constitutional violation for prison officials to require inmates to submit a sick call request For non-emergency concerns, and that's what this case is about Non-emergency concerns I Mean all the pain that he went through through the weekend. I don't think there's a doubt about it We've all twisted our ankle and sometimes the next day. It's better Sometimes the next day it's a whole lot worse and you can't even walk on it But if it's a whole lot worse you wisely avail yourself of Medical remedies that are available to you You go and ask for pain medicine You ask for crutches you ask for the extra stuff that is available that all the inmates know about Because there's tons of inmates who gave affidavits about what happened in an insulin line on Friday But there's hardly anybody who talks about all the stuff that they know as inmates they can get for emergency Medical treatment to stop pain instead of suffering through it. I Think when it comes down to it With this case turns on Was what Rosslyn did? unconsciously and that's From Estelle it's from Gibson vs. Collier to Back in March. I mean great. That's very different facts from the case. We've got here but Judge Ho was talking about the standard because it's a very high standard that we want to have these Cases rely on if we're talking about the Constitution, that's important stuff and the Eighth Amendment prescribes medical care so unconscionable as to fall below Standards meet society's minimum standards of decency So just looking at this case as a matter of common sense I was talking to other people in my office or my kids like I always do about cases that I've got They kind of show. Well, I don't get it He gave him advice he told him what to do Well, I mean is that unconscionable It's certainly not Violative of the Constitution it shouldn't be here so All these things are sort of tied in the deliberate and different center is going to go to the qualified immunity. I think we've Satisfied our burden at the district court and that that as well should protect nurse Rosslyn But without any further questions Thank you, thank you counsel You Your honor The defense seems to deny that a diabetic with a fractured ankle was in pain This is a summary judgment appeal that cannot be Substantial competent admissible evidence is in this record of Friday afternoon there was also an intimation that perhaps mr. Petzold moved too slowly well once again on careful examination of the evidence and the record It is established in the verified complaint, which is competent summary judgment evidence and the affidavit attached to it That the pain began to increase After the injury happened Friday afternoon We're only talking about two two and a half hours between the injury and when he realized he was in trouble His pain had become severe and he went to officer Terrell to seek Treatment that indeed was the proper protocol the defense seems to intimate that perhaps what mr Petzold should have done is stopped nurse Rosslyn in the hallway when he had his moment and Demand an examination then and there but it is hard to credit that as an argument when the defense is also saying that it was Inappropriate to ask then and there for an examination at the insulin window, even though the request was I will wait until you are finished What is it? Clarify for me. What does the law say? About the subjective knowledge of Rostelin The required subjective knowledge on the specific kind of nature the specific severity of the injury I'm glad you brought that up your honor The law requires a plaintiff to show at least an issue of fact as to whether the defendant was aware of a risk of substantial harm not Actual knowledge of substantial harm. It is a risk. That is an Easter. That is an Alderson. That is a key element We don't have to charge the defendant with knowledge of exactly what was wrong and every symptom he had It was his duty to conduct an assessment to find out if someone Limping complaining of discomfort is that sufficient on its own? to kind of flag a Risk of harm. Well, your honor. There was more than that in this case There was the seeing him limping and barely able to walk seeing him grimacing while he was walking which is indicated in the record Being told we don't know the exact words by officer Terrell that there was an injury and he needed care and then finally being told Directly by mr. Petzold that there was swelling in his ankle all those things together create Direct knowledge on Rostelin's part of a risk of serious harm Remember serious harm includes pain during the period of delay and Chapman is an example of that all we know from the Chapman opinions that there was an ankle injury of some unspecified kind and pain and a Debate about whether pain medication was provided that was enough on these facts at least at the summary judgment stage It has to be enough under the cases that this court has previously Decided the defense concedes in fact that nurse Rostelin shouldn't have told my client go violate the rules and find Motrin from someone else and ultimately what appears to be happening is that the Defendant is attempting to escape liability at the summary judgment stage because mr Petzold didn't try again a fourth or a fifth time over the weekend to receive Care that I think has been adequately addressed in the briefs as to why mr Petzold did not again on Saturday morning say try again to request care instead He elected after being denied three times to do exactly what nurse Rostelin said the first time he waited until Monday and he suffered Because he realized he'd be subjected to further disciplinary consequences if he did something else and causation Of course, it's usually a jury question. I see my time has expired. Thank you Yeah, mr. McLeod. Let me ask my understanding is you are appointed pro bono counsel. That's correct we appreciate you and Fellow counsel at the table for your assistance to us in this and glad you were volunteered in this way Thank you both I'll call the second case of the morning